**PHILIP J. TRENCHAK, ESQ.**
Nevada State Bar No. 009924
**Mullins & Trenchak, Attorneys at Law**
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DOCTOR AARON BOMER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA, SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, a division of the State of Nevada, JOANNE MALAY, an individual, JACKIE ARELLANO, an individual,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**Causes of Action:**<br>1) **Discrimination based on race, color, national origin**<br>2) **Discrimination based on age**<br>3) **Retaliation due to age, race, color, national origin**<br>4) **42 U.S. Code § 1983**<br>5) **Defamation**<br>6) **I.I.E.D./N.I.E.D.** |

## COMPLAINT

Plaintiff, Doctor Aaron Bomer (hereinafter "Plaintiff") by and through his attorney PHILIP J. TRENCHAK, Esq., of Mullins and Trenchak, Attorneys at Law, hereby brings suit against STATE OF NEVADA, SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES (hereinafter "SNAMHS"), a division of the State of Nevada, and JOANNE MALAY (hereinafter "MALAY" or "Joanne Malay" or "Ms. Malay"), and JACKIE ARELLANO (hereinafter "ARELLANO" or "Jackie Arellano" or "Ms. Arellano") an individual, and all Defendants mentioned herein (hereinafter collectively "Defendants" or "All Defendants"), inclusive, and avers and alleges as follows:

///

///

1

## JURISDICTION

1.      This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e to 2000e-17 (retaliation), violation of the ADEA, Retaliation, 42 U.S. Code § 1983, and state causes of action.

2.      This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a)(4)(civil rights action) and 42 U.S.C. §2000e-5(f)(3)(unlawful discrimination and retaliation in employment). This Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3.      All material allegations relative to the named defendants contained in this Complaint are believed to have occurred in the State of Nevada, Clark County.  Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4.      Plaintiff initiated the process of filing a Charge of Discrimination against her former employer, the Defendant named in this action, with the United States Equal Opportunity Commission ("EEOC") wherein she alleged discrimination on the basis of her age, sex and retaliation as a continuing action.  This was done within 300 days of the incident giving rise to this complaint.

5.      Thereafter, Plaintiff's attorney received DR. AARON BOMER's Notice of Right to Sue from    the    U.S.    Equal    Employment    Opportunity    Commission    and    the United States Department of Justice.  Please see attached Exhibit A.

6.      This action is being filed within 90 days of the "Right to Sue" Letters being received by Plaintiff.  Therefore this action is timely.

7.      Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## PARTIES

8.      Plaintiff is, and was at all times material to this action, an individual, residing in the State of Nevada, employed by Defendant.

9.      Plaintiff is informed and believes, and thereupon alleges, that Defendant is and was at all

times material to this action, STATE OF NEVADA, SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, a division of the State of Nevada.

10.     JOANNE MALAY in her official capacity as Hospital Administrator of the Southern Nevada Adult Mental Health Services.

11.     JACKIE ARELLANO in her official capacity as Human Resources Director for Rawson Neal.

## GENERAL ALLEGATIONS

12.     Plaintiff is informed and believes, and thereupon alleges, that DR. AARON BOMER, Plaintiff, entered into employment with Defendant for over twenty (20) years.

13.     On or about February 15, 2018, Dr. Bomer was not selected by Hospital administrator Malay as a "key informant" for the agencies strategic plan despite his experience and the size of the department that he oversees.

14.     That Dr. Bomer reported this malfeasance to then Deputy Administrator of Clinical Services for the Department of Public and Behavioral Health, Duane Young.

15.     That on or about March 2, 2018, Dr. Bomer reported to Hospital Administrator Joanne Malay and also reported to Human Resources Jackie Arellano, Human Resources Director via email regarding concerns Dr. Bomer had about Malay circumventing his authority and choosing to work with his subordinate staff directly.

16.     On or about February 27, 2018 Dr. Bomer reported systemic inequitable employment practices to Deputy Administrator Duane Young.

17.     On or about March 2, 2018, Administrator Joanne Malay confirmed via email that Dr. Bomer was being paid the exact same pay as his subordinate staff member, who Dr. Bomer was supervising at the time which is inconsistent with NAC 284.204.

18.     On or about March 5, 2018 during a phone call, Mr. Young discussed Dr. Bomer's

concerns and noted that selections on who is ultimately hired for a promotion is sadly based on who they feel "comfortable" working with and the qualifications of the candidate are not really a factor.

19.     Mr. Young is African American, and he noted that based on his experience in working with Hospital Administrator Joanne Malay, she appears to be uncomfortable working with African Americans.

20.     In April of 2018, Dr. Bomer was not selected to attend a two (2) day retreat for leaders in clinical services on how to become better leaders and build a better organization. Even though, Dr. Bomer had the second largest department in the hospital.

21.     On or about August 6, 2018 Mr. Young conducted a survey on the organizational culture at Southern Nevada Adult Mental Health (SNAMHS) in which over two-hundred (200) employees participated.

22.      Mr. Young stated in an email to the agency that his "heart was heavy" after hearing stories of racism and discrimination and outlined a strategic plan to address discrimination at SNAMHS.

23.     Subsequently, after sending out the email, Mr. Young was transferred to a different agency prior to implementing any strategic planning to address racism at Southern Nevada Adult Mental Health.

24.     On or about July 26, 2019, Dr. Bomer received a meeting invite email from hospital Administrator Joanne Malay to meet on July 29, 2019 at 9:00 am to discuss Social Services.

25.     In attendance at this meeting was then Hospital Administrator Joanne Malay and Jackie Arellano of SNAMHS Human Resources.

26.     At this meeting, Dr. Bomer was informed that he was being put on administrative reassignment pending notification of a formal investigation.

27.     Dr. Bomer inquired what the investigation was about and Jackie Arellano indicated that they did not know.

28.     Dr. Bomer was so disturbed by these events that he became physically ill and took sick

4

leave that day.

29.     Administrator Malay sent Dr. Bomer a text message on that very day stating that Dr. Bomer can take sick leave everyday if he chooses to do so.

30.     On or about July 31, 2019, Dr. Bomer texted administrator Malay requesting administrative leave with pay pending the outcome of the investigation to prevent damage his professional reputation, and this request was denied.

31.     Dr. Bomer possesses valid documentation of a former colleague that the courtesy of obtaining "paid leave" was extended to a department head when that department head was facing the exact same allegations.

32.     A subsequent meeting was set up for August 1, 2019 at 9:00 am by administrator Joanne Malay and Jackie Arellano via text message.

33.     At this meeting, Dr. Bomer was then informed that there were allegations of sexual harassment of "employees" which created a hostile workplace.

34.     Dr. Bomer was issued a "NPD32" notice of investigation which indicated that Dr. Bomer was being reassigned due to these allegations.

35.     Dr. Bomer was scheduled to be interviewed on August 16, 2019 by investigator Deidre McCain.

36.     In Dr. Bomer's sincere effort to preserve his professional reputation and to not compromise his ability to lead his department in the future Dr. Bomer asked again if there was anyway the organization could grant administrative leave with pay pending the outcome of the investigation and this request was denied by Jackie Arellano, Human Resources director.

37.     The Nevada Revised Statues indicate that this "leave with pay" may be granted during a formal investigation of alleged wrongdoing.

38.     As an alternative to "leave with pay," Dr. Bomer was offered a position answering

5

telephones in the main office by the front door of the building to further humiliate and degrade him.

39.     Upon valid information and belief, the courtesy of granting a "paid leave" was extended to a former colleague in this same position and circumstance.

40.     Dr. Bomer continued to experience physical distress due to these events and went to see his primary care physician.

41.     Dr. Bomer's treating physician ran an EKG and became alarmed with the results and took Dr. Bomer off of work until he saw a cardiologist.

42.     Dr. Bomer contacted and retained an Attorney on August 7, 2019.

43.     Dr. Bomer's attorney had to reschedule the interview for August 21, 2019 due to a scheduling conflict.

44.     Prior to the interview Dr. Bomer's attorney contacted Ms. McCain on August 15, 2019 to determine if there was any evidence of wrongdoing on Dr. Bomer's part.

45.     Subsequently, Dr. Bomer's Representative and investigator McCain agreed that there was no direct evidence of any wrongdoing on Dr. Bomer's part and that the investigator did not want to interview Dr. Bomer for any reason.

46.     Moreover, Ms. McCain informed Dr. Bomer's attorney that she was closing the case and that Dr. Bomer should be receiving notification for Dr. Bomer's employer releasing him to come back to work.

47.     The investigator granted this clearance on August 15, 2019.

48.     On August 27, 2019, after not receiving clearance to return to work, Dr. Bomer contacted the NAACP to file a complaint.

49.     The NAACP sent an email to state officials on August 27, 2019 inquiring about the events of the last month According to Annette Altman, SNAMHS, Human Resources there was a report received from a community partner alleging "inappropriate conduct of a sexual nature" on Dr. Bomer's part.

50.     Ms. Altman's email is clearly inconsistent with what Human Resources wrote on the NPD32 of August 1, 2019, which alleges that Dr. Bomer sexually harassed "employee or employees" and created a hostile work environment.

51.     SNAMHS did interview state employees even though Ms. Altman's email alleges it was a complaint from a community partner.

52.     The NRS and the NAC clearly distinguish what an "employee" is and what a "work environment" is.

53.     Dr. Bomer received a letter dated September 9, 2019 from Agency administrator Lisa Sherych, stating the allegations against Dr. Bomer were not substantiated.

54.     Dr. Bomer had been utilizing FMLA/Sick leave and texting his supervisor Joanne Malay since July 29, 2019.

55.     Dr. Bomer returned to work on September 17, 2019 after receiving medical clearance from his primary care physician.

56.     On August 18, 2019, Dr. Bomer received information from Dr. Bomer's administrative assistant informing Dr. Bomer that Dr. Bomer's subordinate, engaged in acts of a sexual nature in her office which was witnessed by Social Worker Robert Benedict.

57.     Dr. Bomer's Administrative Assistant informed Dr. Bomer that she reported this conduct to Hospital Administrator Joanne Malay and Jackie Arellano for follow-up via email on August 16, 2019.

58.     Mrs. Guzzetta informed Dr. Bomer that her complaint was regarding this individual's conduct was never formally addressed.

59.     Dr. Bomer possesses the email sent from Dr. Bomer's Administrative Assistant to Administrator Malay and Jackie Arellano.

60.     On October 2, 2019, Dr. Bomer met with Administrator Joanne Malay for a scheduled meeting to discuss Social Services and at this meeting MALAY directed that Dr. Bomer remove a certain

subordinate from overseeing or performing services in the courts or jails due to his lack of professionalism, consistency and follow-thru.

61.     Dr. Bomer sent this individual an email on October 8, 2019 informing this individual of Ms. Malay's request.

62.     On October 17, 2019 the subordinate who had been removed from working in the courts or jails due to his lack of professionalism, and met with Hospital Administrator Malay at her request and was informed that she decided to separate the department now this individual would oversee community services which included the courts, jails and the Mobile Crisis team.

63.     MALAY stated that this individual would be reporting directly to her going forward and provided Dr. Bomer and his former subordiante with new work performance standards.

64.     Joanne Malay then walked into the prescheduled Social Services meeting twenty (20) minutes later and informed the entire Social Services department that Dr. Bomer was relieved of his duties with respect to overseeing community services which humiliated and degraded Dr. Bomer.

65.     This behavior on the part of Malay also constitutes "bullying" in direct contravention of division policy.

66.     Dr. Bomer has performed successfully in this capacity for over six (6) years.

67.     On October 21, 2019 Dr. Bomer sent an email to then Deputy Administrator Jennifer Sexton regarding this blatant retaliatory and hostile treatment on the part of hospital administrator Joanne Malay.

68.     On October 22, 2019, Dr. Bomer sent an email communication to Hospital Administrator Joanne Malay regarding improper governmental actions pertaining to the violation of patients' rights in the "one page" denial of rights process for mental ill patients at Rawson Neal Psychiatric Hospital.

69.     Dr. Bomer requested this matter be escalated to division for clarification and resolution.

70.     On November 15, 2019, Dr. Bomer received a NOTICE OF EMPLOYEE RIGHTS

8

DURING AN INTERNAL INVESTIGATION and was informed by SNAMHS Human Resources representatives Elisa Diaz – Bitter and Christine Moebius that he was being investigated stemming allegations that Dr. Bomer failed to properly report and respond to serious incidents regarding allegations against a caregiver who was previously under Dr. Bomer's supervision and that SNAMHS Human Resources became aware of the incident on October 18, 2019.

71.     Dr. Bomer was informed that he would be formally interviewed regarding this allegation on November 20, 2019.

72.     According to NRS 284.387, the above- mentioned notice is required to be provided to the employee within thirty (30) days after the appointing authority becomes aware or should have reasonably become aware of the allegations.

73.     These new allegations were made against Dr. Bomer by an unnamed individual during a disciplinary meeting for that same individual on October 10, 2019.

74.     The unnamed individual, upon valid information and belief, is the same individual that made the unfounded allegation that Dr. Bomer was the sexual harassment perpetrator that resulted in the investigation that began in July of 2019.

75.     This original meeting on October 10, 2019 was attended by Jackie Arellano, Dr. Bomer, and the unnamed individual, and Christine Moebuis who took notes during the meeting.

76.     This investigation is therefore outside the timeframe specified in NRS 284.387.

77.     Dr. Bomer was subsequently interviewed with his attorney present on November 20, 2019 by investigators Francis Twigg and Debra Mitchell- Wright who stated they would provide us a copy of the complaint.

78.     A follow-up correspondence was sent on November 22, 2019 and again on November 30, 2019.

79.     Investigator Mitchell did acknowledge receipt of the request on December 2, 2019

however the original complaint has never been received.

80.     On November 2, 2019 Dr. Bomer met with administrator Joanne Malay to discuss social services. During this meeting, Mrs. Malay referred to a Social Worker of African American decent as a "boy" she went on to demean this Social worker stating that "I don't where he is from but people don't respect him."

81.     On December 17, 2019 in the Executive Leadership Meeting, Hospital Administrator Joanne Malay, while inquiring about the monthly report that Dr. Bomer submitted to the members of the committee asked if someone else in the meeting could articulate for her what she was trying to say to Dr. Bomer, thereby strongly insinuating that Dr. Bomer was incapable of comprehending what MALAY was stating.

82.     As a supervisor, Dr. Bomer understands and believes strongly that all allegations of sexual harassment and or hostile work environment must be taken seriously and investigated.

83.     Dr. Bomer has recently been made aware and has factual evidence of incidences of staff members at the Rawson-Neal Psychiatric Hospital who are Caucasian and are in fact engaging in inappropriate sexual behavior and workplace bullying and their actions have yet to be addressed by Administrator Malay and Jackie Arellano or the State of Nevada. However, it is quite clear that in Dr. Bomer's case, it was a rush to judgement with an unsubstantiated complaint by a questionable individual with no evidence of wrongdoing on Dr. Bomer's part which.

84.     The logical conclusion is that this treatment is based on discriminatory intentions.

85.     Moreover, not only has Dr. Bomer been treated unfairly in comparison to his caucasian coworkers, but this rush to judgment has damaged Dr. Bomer's professional reputation and has critically affected his health.

86.     Plaintiff was discriminated against.

87.     Individuals not of his protected class were treated in a much more favorable manner than

Dr. Bomer.

88.     Plaintiff suffered additional damages set forth in this Complaint.

## FIRST CAUSE OF ACTION
**(Discrimination Based on Race, Color, National Origin in violation of State and Federal Statutes)**
**Against Defendant SNAMHS**

89.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

90.     Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on race, color, and national origin.

91.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq. and Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

92.     Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff to disparate terms of employment based upon race, color, and national origin.

93.     Plaintiff was continually subjected to race-based discrimination and complained of that discrimination to management.

94.     Defendant did not remedy the discrimination.

95.     Defendant allowed the discrimination to continue.

96.     Defendant allowed the individuals committing the discrimination to show open hostility after the discrimination was complained about to members of management.

97.     Defendant discriminated against Dr. Bomer when Defendant retained as employees, managers who continued to subject Plaintiff to discrimination in the workplace throughout the entirety of his term of employment with Defendant.

98.     No other similarly situated persons, not of Dr. Bomer's protected class, were subject to the same or substantially similar treatment.

11

99.     Plaintiff suffered adverse economic impact including but not limited to loss of pay, benefits, expenses and other damages which will be more fully described at the time of trial.

100.     Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

101.     Plaintiff suffered and continues to suffer compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by his employer.

102.     Plaintiff suffered actual physical harm manifested in medical irregularities due to the intense mental anguish which was a direct result of the dilatory behavior of Defendant Employer.

103.     Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

104.     Pursuant to 1991 Amendments to title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious, intentional repeated violations of federal and state civil rights laws. Discrimination based on race, national origin, and color has been illegal since 1964 and an employer of the size, reputation and experience of Defendant should have not engaged in this blatant discrimination.

105.     Plaintiff suffered damages in an amount to be deemed sufficient by the jury.

106.     Plaintiff is entitled to an award of reasonable attorney's fees.

107.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of his race, color, national origin or a combination thereof.

108.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

109.

## SECOND CAUSE OF ACTION
### (Violation of the Age Discrimination in Employment Act (ADEA)
### Against Defendant SNAMHS

110.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

111.     Plaintiff is over the age of forty (40), and therefore is a member of the class protected pursuant to the ADEA.

112.     Plaintiff was treated in a disparate manner in relation to those individuals not of this protected class.

113.     This matter is described above in the "General Allegations" of this Complaint.

114.     Specifically, Plaintiff was subjected to an intense investigation into his behavior which

115.     Upon information and belief, the disparate treatment of individuals .

## THIRD CAUSE OF ACTION
### (Retaliation based upon race, age, color, and national origin under Federal Law, 42 U.S.C. §
### 2000e-3 and Nevada State Law, NRS 613.340)
### Against Defendant SNAMHS

116.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

117.     In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

118.     In violation of NRS 613.340 Defendant retaliated against Plaintiff after he complained of acts which she reasonably believed were discriminatory.

119.     The behavior complained of also constitutes retaliatory harassment and the creation of an illegally hostile environment.

120.     There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff in her workplace.

121.     The aforementioned actions and conduct by Defendants constitutes illegal retaliation which is prohibited by federal and state statutes.

122.     Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and she is entitled to be fully compensated therefor.

123.     Plaintiff had to engage in the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

### FOURTH CAUSE OF ACTION
**(42 U.S. Code § 1983 - Civil action for deprivation of rights)**
**Against all Defendants**

124.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

125.     That SNAMHS is a government run division of the State of Nevada which subjected Plaintiff to the above described indignities and damages under color of state law.

126.     That SNAMHS's conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

127.     That beginning at a time on or about July 22, 2019, Defendants combined, conspired, confederated, and agreed together and with each other to knowingly and willfully engage in the following acts, among others to cause harm to Plaintiff because of his race.

a.     To violate Plaintiff's civil rights;

b.     Defendants were acting under color of state law.

128.     At all times material and relevant herein, Defendant, MALAY was acting within the scope of her authority as an agent of SNAMHS.

129.     At all times material and relevant herein, Defendant, ARELLANO was acting within the scope of her authority as an agent of SNAMHS.

130.     SNAMHS condoned the behavior of MALAY as its managing agents were aware of her behavior toward African-Americans.

131.     SNAMHS condoned the behavior of ARELLANO as its managing agents were aware of

14

her behavior toward African-Americans.

132.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff experienced damages and is entitled to compensation for her pain and suffering, lost earnings, medical expenses, and other related costs including, but not limited to, attorney fees in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

133.     The conduct of the Defendants, and each of them, individually and in concert with one another as herein alleged was willful, intentional, oppressive, fraudulent, malicious and done in a wanton and reckless disregard of Plaintiff's rights and thereby warrant the imposition of punitive damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) as to the Defendants in their individual capacity.

134.     Plaintiff had to engage the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

135.     Plaintiff suffered damages, due to the violation of 42 U.S. Code § 1985 in an amount to be deemed sufficient by the jury.

136.     Defendants are guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her age.

137.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendants in an amount deemed sufficient by the jury.

138.     That Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

139.     Plaintiff had to engage in the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

## FIFTH CAUSE OF ACTION
### (DEFAMATION)
### Against all Defendants

140.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

141.     1.) Defendant made a false and defamatory statement concerning plaintiff; 2.) An unpriviled publication of this statement was made to a third person; 3.) Defendant was at least negligent in making the statement; and 4.) Plaintiff sustained actual of presumed damages as a result of the statement. *Pagasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 57 P.3d 82 (2002). *See Simpson v. Mars Inc.,* 113 Nev. 188, 929 P.2d 966 (1997); *Chowdry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459 (1993).

142.     Upon valid information and belief, this underlying "sexual harassment" allegation arose during training wherein an individual stated "A person in a high position at Rawson Neil is inappropriate."

143.     A certain individual then took that statement and decided in an extremely reckless and careless manner to extrapolate that that individual was in fact Dr. Bomer.

144.     This person, who shall remain nameless at this time, given certain protections that a "supposed whistleblower" may enjoy.

145.     Upon information and belief, thirty (30) individuals were interviewed regarding alleged inappropriate behavior on the part of Dr. Bomer due to this unfounded allegation.

146.     The individual that is believed to have made this statement is known to Human Resources to be a serial complainer.

147.     Management took this unfounded allegation and proceeded to dismantle Dr. Bomer's reputation and career through a thorough interview process which cleared Dr. Bomer of all wrongdoing in a matter of a few weeks.

148.     This statement was blatantly false, given that the investigation cleared Dr. Bomer of any

16

wrongdoing.

149.    The individual making this statement is known to have made numerous accusations on a regular basis which are also patently false.

150.    The investigation was conducted without any foundation whatsoever to support the veracity and/or good faith thereto.

151.    The investigation had the net result of spreading rumor and innuendo and destroying the reputation of an esteemed Doctor who is the Director of Rawson-Neal Social Services Department.

152.    Plaintiff is entitled to an award of reasonable attorney's fees.

### SIXTH CAUSE OF ACTION
**(Intentional/Negligent Infliction of Emotional Distress)**
**Against all Defendants**

153.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

154.    Defendants' conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

155.    Defendants' conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

156.    Defendants had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

157.    Defendants breached that duty.

158.    Defendants intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

159.    Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and she is entitled to be fully compensated therefor.

160.    Plaintiff is entitled to an award of reasonable attorney's fees.

17

**WHEREFORE**, Plaintiff prays for relief against Defendants, each of them, as follows:

## <u>ON ALL CAUSES OF ACTION</u>

1.      For compensatory damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

2.      For punitive damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

3.      For special damages in the principal amount in excess of seventy-five thousand dollars, ($75,000.00) to be proven at trial;

4.      For attorney's fees and costs incurred;

5.      For all damages in an amount to be proved at trial;

6.      For costs of suit herein incurred;

7.      For reasonable interest on amounts due; and

8.      For any such other and further relief as this Court deems just and proper.

DATED this 24th day of January, 2020.

**MULLINS & TRENCHAK, ATTORNEYS AT LAW**

Philip J. Trenchak, Esq.
Nevada Bar No. 009924
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Parkway
Las Vegas, NV 89104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFF'S JURY DEMAND

Plaintiff, DR. AARON BOMER by and through her attorneys of record, PHILIP J. TRENCHAK, ESQ. and VICTORIA MULLINS, ESQ. of the law firm MULLINS & TRENCHAK, ATTORNEYS AT LAW, respectfully submits this Demand for Jury pursuant FRCP 38 in the above captioned matter.

DATED this 24th day of January 2020.

MULLINS & TRENCHAK, ATTORNEYS AT LAW

PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 009924
VICTORIA C. MULLINS, ESQ.
Nevada State Bar No. 13546
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
E: victoria@mullinstrenchak.com
Attorneys for Plaintiff

19

# **Exhibit A**
## "Right to Sue" Notices



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7018 1830 0000 1244 7723

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

January 03, 2020

Dr. Aaron Bomer
c/o Philip Trenchak, Esquire
Law Offices of Mullins & Trenchak
1614 S. Maryland Pkwy.
Las Vegas, NV 89104

Re: EEOC Charge Against Rawson-Neal Psychiatric Hospital
    No. 487201902005

Dear Dr. Bomer:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Las Vegas Local Office, Las Vegas, NV.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Eric S. Dreiband
                              Assistant Attorney General
                              Civil Rights Division

                         by *Karen L. Ferguson*
                              Karen L. Ferguson
                              Supervisory Civil Rights Analyst
                              Employment Litigation Section

cc: Las Vegas Local Office, EEOC
    Rawson-Neal Psychiatric Hospital

EEOC Form 161-B (11/15)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Aaron Bomer
c/o: MULLINS & TRENCHAK, ATTORNEYS AT LAW

attn: Philip Trenchak, Esq.
1614 S. Maryland Pkwy.
Las Vegas, NV 89104

From:  Las Vegas Local Office
333 Las Vegas Blvd South
Suite 5560
Las Vegas, NV 89101

[  ]  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2019-02005 | Ruth I. Ibarra, Investigator | (702) 388-5085 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[  ]  More than 180 days have passed since the filing of this charge.

[  ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[  ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[  ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Patricia A. Kane,
Acting Director

JAN - 3 2020

(Date Mailed)

Enclosures(s)

cc:    Jackie L. Arellano, Personnel Officer II
NEVADA DEPT. OF HEALTH AND HUMAN SERVICES
1321 S. Jones Blvd
Las Vegas, NV 89146

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  —  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**  —  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**  —  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**  —  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Las Vegas Local Office**

Lloyd D George US Courthouse
333 Las Vegas Blvd. South, Suite 5560
Las Vegas, NV 89101
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Las Vegas Direct Dial: (702) 388-5013
FAX (702) 388-5094
Website: www.eeoc.gov

Charge No: 487-2019-02005

Aaron Bomer
c/o Mullins & Trenchak, Attorneys at Law
Attn: Philip Trenchak, Esq.
1614 S. Maryland Pkwy.
Las Vegas, NV 89104

Dear Mr. Bomer:

The Commission has received your request for a Notice of Right to Sue in the above-referenced charge. Your request has been forwarded to the U. S. Department of Justice for action. That agency will act on your request as soon as possible and issue the Notice directly to you.

If you have any questions, please write:

Karen Ferguson, Supervisory Civil Rights Analyst
USDOJ, CRT, Employment Litigation Section
4 Constitution Square
150 M. Street, NE, RM 9.524
Washington D.C. 20530

Your charge alleged discrimination based on violation of one or more of the following laws:

Title VII of the Civil Rights Act   **X**___
Age Discrimination in Employment Act (ADEA)   __ **X** ___

If your charge includes an ADEA basis, please note the following: While Title VII, the ADA and GINA require the issuance of a Right to Sue before you can bring suit under the law; you obtained the right to sue under the ADEA when you filed your charge, subject to a 60-day waiting period. ADEA suits must be brought **within 90 days** of the date of your receipt of this notice. Otherwise, your right to sue on the above-numbered charge will be lost. Individuals filing EPA claims may proceed directly into court. EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

With the issuance of this letter, the Commission is terminating its process with respect to this charge.

On Behalf of the Commission:

OCT 2 5 2019

_____
Date

_____
Patricia Kane, Acting Director
Las Vegas Local Office

cc:   Rawson-Neal Psychiatric Hospital
c/o Nevada Dept. of Health and Human Services
Attn: Jackie Arellano, Personnel Officer II
1321 S. Jones Blvd.
Las Vegas, NV 89146